434 So.2d 1183 (1983)
DEER SLAYERS, INC., Formerly Mayer Realty Hunting Club, Inc.
v.
LOUISIANA MOTEL AND INVESTMENT CORPORATION.
No. 82 CA 0945.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
*1184 Grady C. Weeks, Authement, Weeks & Larke, Houma, and Joseph W. Cole, Jr., Ventress, Michael G. Crow, New Orleans, for plaintiff-appellee.
Ralph B. Chustz, Kearney, Smith & Chustz, New Roads, and David M. Culpepper, and Joseph E. LeBlanc, Jr., Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, for defendant-appellant.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This is an appeal from an interlocutory judgment awarding plaintiff hunting club, Deer Slayers, Inc., a preliminary injunction restraining plaintiff's lessor, defendant Louisiana Motel and Investment Corporation (LMIC), from harvesting certain timber and from conducting clearing operations on its property in Pointe Coupee Parish.
At issue is whether or not the trial court erred in refusing to disqualify plaintiff's attorney because he was a witness in the case. Also at issue is whether or not the injunction was supported by adequate proof of irreparable injury. We affirm.
On April 1, 1978, LMIC and Mayer Realty Hunting Club, Inc. (predecessor in interest to plaintiff Deer Slayers) entered into a written agreement which granted plaintiff a hunting lease on approximately 1800 acres of defendant's land on Raccourci Island in Pointe Coupee Parish. The lease was for an initial term of twenty years, with an option for an additional twenty years "... for and in the consideration of ONE ($1.00) DOLLAR and other valuable considerations per year." As part of "other valuable consideration," Mayer Realty Hunting Club, Inc. agreed to purchase a hunting camp on the lease property for $16,000.00. The sale of the hunting camp was set forth in a separate written agreement dated January 1, 1979.
The lease provided that the hunting club could use the leased property solely for hunting and fishing purposes. The lease allowed the hunting club to enter upon the land to build dirt roads for hunting vehicles, to prepare the land for deer hunting, and to use and maintain the camp and grounds surrounding it. The lease also provided liquidated damages for the termination of plaintiff's leasehold interest if LMIC sold the property, since plaintiff had executed a "counter letter" agreeing to a termination of the lease if LMIC sold the property.
The evidence adduced at the hearing indicated LMIC had severe financial difficulties in April 1978 and was looking for money to avoid foreclosure on some of its property. About the same time, Mayer Realty Hunting Club was making preparations for the 1978 hunting season. The hunting club, which was originally composed of only LMIC stockholders, wanted to make repairs to the hunting camp, but was reluctant to do so without some guarantee that its members could continue to hunt the property. The hunting camp had been flooded prior to April 1978 and was in poor condition. LMIC had previously sought to raise money by mortgaging the camp, but the camp was considered insufficient security, since its banker considered the camp to be worth only four or five thousand dollars. Mr. Sol Mayer, then president of LMIC, saw the hunting club as a potential solution to LMIC's financial difficulties. Negotiations then ensued which resulted in a sale of the *1185 camp for $16,000 and a lease of the property to the hunting club. As mentioned above, the lease was completed first with the sale to be entered into later as part of the consideration for the lease.
By March 1981, Mr. Sol Mayer had been replaced by Mr. Terry Trosclair as president of LMIC and Mayer Realty Hunting Club had become Deer Slayers, Inc., with membership no longer restricted to LMIC shareholders. Since the hunting club was no longer as closely associated with LMIC as before, the directors of LMIC began to question the validity of the lease. The dispute between Deer Slayers and LMIC eventually led to this litigation, which began June 25, 1981 when Deer Slayers filed a petition for a declaratory judgment upholding the validity of the lease.
In October 1981, LMIC commenced a timber harvesting operation on the leased property. In 1972, LMIC had entered into a timber sale agreement with Roy O. Martin Lumber Company whereby Martin had received the right to cut all standing timber on the property which was fourteen inches or larger in diameter at six inches above the ground. LMIC and Martin had later agreed to terminate their timber sale in 1984. Plaintiff took its lease subject to this prior recorded timber sale. However, when LMIC began its clearing operations in 1981, it had also contracted with Mr. John Vaccaro for the clearing and "chipping" of all merchantable timber on the property, including trees under fourteen inches in diameter. Under this arrangement, 800 to 900 of the total 1800 leased acres were to be completely cleared for the cultivation of soybeans. The rest of the property was to be cleared of all merchantable timber, though some trees considered unmerchantable would remain standing.
When plaintiff's president, Mr. Grady Weeks, first became aware of the nature of the clearing operations in May 1982, he wrote LMIC's president, Mr. Trosclair, informing him that the hunting club considered these operations a breach of the lease. Trosclair and the board of directors of LMIC did not consider their operations to be violative of the lease and informed plaintiff through Mr. Weeks that they intended to clear all the property which was suitable for agricultural purposes.
On July 21, 1982, Deer Slayers obtained leave of court to file its supplemental and amending petition in which it claimed irreparable injury to its leasehold interest from defendant's clearing operations other than with Martin. Plaintiff sought the issuance of temporary and permanent injunctive relief and $30,000.00 in monetary damages or, alternatively, monetary damages in the amount of $605,000.00. On July 21, 1982, the trial court issued a temporary restraining order prohibiting LMIC from clearing any of the property which is the subject matter of this suit. By this time, approximately 270 acres had been cleared for soybeans. On July 28, 1982, a hearing on the preliminary injunction was conducted and on August 9, 1982, the trial court entered a judgment of preliminary injunction further restraining LMIC from harvesting the undersize timber and clearing the property for agricultural purposes. From this judgment, LMIC has appealed.
As one of its specifications of error, defendant contends the trial court erred in refusing to disqualify Mr. Grady Weeks as counsel for Deer Slayers. At the outset of the hearing on the preliminary injunction, defendant moved to disqualify Weeks as counsel for Deer Slayers on the ground that the participation of Weeks as both lawyer and witness for plaintiff violated both the Ethical Considerations and the Disciplinary Rules of the Code of Professional Responsibility. After the trial court refused to disqualify Weeks, he thereafter introduced his own affidavit into evidence and took the stand, over defendant's objection, to testify in a narrative fashion as to several of the contested issues of fact.
The Articles of Incorporation of the Louisiana State Bar Association contain the legal profession's Code of Professional Responsibility. La.R.S. 37: Ch. 4 App. Art. 16. The ethical precepts which are at issue herein are controlled by Canon 5 of the Code, which mandates that "[a] lawyer should exercise independent professional judgment on behalf of a client." Among *1186 the Ethical Considerations of this Canon dealing with "interests of a lawyer that may affect his judgment," are Ethical Considerations 5-9 and 5-10 which state respectively:
"Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively."
"Problems incident to the lawyer-witness relationship arise at different stages; they relate either to whether a lawyer should accept employment or should withdraw from employment. Regardless of when the problem arises, his decision is to be governed by the same basic considerations. It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he will be called as a witness because his testimony would be merely cumulative or if his testimony will relate only to an uncontested issue. In the exceptional situation where it will be manifestly unfair to the client for the lawyer to refuse employment or to withdraw when he will likely be a witness on a contested issue, he may serve as advocate even though he may be a witness. In making such decision, he should determine the personal or financial sacrifice of the client that may result from his refusal of employment or withdrawal therefrom, the materiality of his testimony, and the effectiveness of his representation in view of his personal involvement. In weighing these factors, it should be clear that refusal or withdrawal will impose an unreasonable hardship upon the client before the lawyer accepts or continues the employment. Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate."
Additionally, Disciplinary Rules 5-101 and 5-102 proscribe, except in a few enumerated instances, the dual role of lawyer-witness. The Rules read as follows:
"DR 5-101. Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.
(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.
(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
(1) If the testimony will relate solely to an uncontested matter.
(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."
"DR 5-102. Withdrawal as Counsel when the Lawyer Becomes a Witness.
(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not *1187 continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101B(1) through (4).
(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."
Since it was apparent before trial that Mr. Weeks' testimony as former president of Deer Slayers would be necessary, we cannot approve of his representation in the case. He should have arranged for another attorney to handle the rule for the preliminary injunction.
Defendant cites Gutierrez v. Travelers Ins. Co., 358 So.2d 349 (La.App. 4th Cir. 1978) for the proposition that the admission of an attorney's testimony in violation of DR5-101 and 102 is reversible error. In Gutierrez, the court found the plaintiff's attorney to be the material witness in the case, so it annulled the judgment and remanded for a new trial. However, we perceive the greater weight of authority and the better view is that the admission of an attorney's testimony does not per se warrant the sanction of reversal and a new trial. See United States v. Birdman, 602 F.2d 547 (3d Cir.1979), cert. denied, 444 U.S. 1032; 445 U.S. 906; 100 S.Ct. 703, 1084; 62 L.Ed.2d 668; 63 L.Ed.2d 322 (1980), and authorities cited therein. Reversal is not warranted because the "Code [of Professional Responsibility] does not delineate rules of evidence but only sets forth strictures on attorney conduct." Universal Athletic Sales Co. v. American Gym, Etc., 546 F.2d 530, 539 (3d Cir.1976), cert. denied, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977).
In State v. Miller, 391 So.2d 1159 (La. 1980), the Louisiana Supreme Court held that the admission of testimony of a prosecutor as an impeachment witness was only harmless error, if it was error at all. Likewise, in Bordelon v. Safeway Ins. Co., 380 So.2d 1379 (La.App. 3d Cir.1980), writ denied, 384 So.2d 799 (La.1980), the court held that the consideration of an attorney's testimony in the context of a violation of DR5-101 and 102 was not error where "the facts simply do not establish the evidence was so untrustworthy or questionable as to warrant its exclusion to plaintiff's detriment." 380 So.2d at 1384. Both of these cases were decided after Gutierrez, and Bordelon even distinguished Gutierrez as decided under "extreme circumstances."
In the instant case, we feel that the refusal to disqualify Weeks was harmless error. Like in Bordelon, there is no evidence to show the attorney's testimony to be untrustworthy. The trial judge promised to weigh Weeks' testimony in light of his interest in the case. Though Weeks testified in a narrative fashion, the trial judge saw that the defendant had an opportunity to object to his testimony and cross-examine him in an effective manner. In light of these circumstances, we feel that the defendant was not prejudiced by Weeks assuming the dual role of attorney/witness so as to justify a new trial.
LMIC's final assignment of error alleges manifest error in that the trial court issued the preliminary injunction without adequate proof of irreparable injury.
A preliminary injunction is a procedural device which is interlocutory in nature and is designed to preserve the status quo pending a trial of the issues on the merits of the case. La.Code Civ.P. art. 3601; Haughton Elevator Division v. State, Etc., 367 So.2d 1161 (La.1979). A preliminary injunction may issue only on a prima facie showing by the applicant that he is entitled to the relief sought and that he would suffer irreparable injury if it is not granted. Talley v. Capital Bank and Trust Co., 411 So.2d 530 (La.App. 1st Cir.1982); National Pac. Corp. v. American Com. Fin. Corp., 348 So.2d 735 (La.App. 1st Cir.1977). Irreparable injury is that for which an injured party can not be compensated adequately in money damages, or for which damages can not be measured by a pecuniary *1188 standard. National Pac. Corp., supra; Caffery v. Powell, 320 So.2d 223 (La.App. 3d Cir.1975).
Plaintiff has made a prima facie case showing that defendant's activities are in violation of the lease. Under La.Civ. Code art. 2692(3), the lessor has a duty not to interfere with the lessee's use of the leased thing for the purpose for which it was leased. By clearing the leased property for agricultural purposes, the lessor seeks to change the nature of this property. Although the experts who testified differed in their opinions as to how the clearing operations would effect the land for the purpose for which it was leased (deer hunting), we cannot say the trial court erred in finding the clearing activities to be violative of the lease. The defendant granted the lease when it was in a position of financial difficulty; it cannot now abrogate its legal duties under the lease when it is in a better financial condition in order to further exploit the economic potential of the property.
An injunction is an equitable remedy available to a plaintiff without an adequate remedy at law. West v. Winnsboro, 252 La. 605, 211 So.2d 665 (La.1967). An "adequate remedy at law" is one which is "as speedy, efficient, and complete as the remedy in equity." West, supra. Although La.Civ.Code art. 2696 grants a remedy at law against a lessor for damages suffered by an evicted lessee, this remedy alone is inadequate under the circumstances of this case.
In Caney Hunting Club, Inc. v. Tolbert, 294 So.2d 894 (La.App. 2d Cir.1974), writ denied, 299 So.2d 358 (La.1974), the court recognized the appropriateness of an injunction in cases involving disturbances of a hunting lease. In Caney, the issue was whether or not the plaintiff was entitled to a preliminary injunction prohibiting defendants from trespassing on lands which plaintiff had leased for hunting and fishing purposes. The court held as follows:
"[W]e are convinced plaintiff has shown that it will suffer `irreparable injury, loss, or damage' unless a preliminary injunction is granted in this case. This appears to be the very type of case for which injunctive relief would be the only effective remedy. Indeed, plaintiff's only reason for obtaining a lease on the property was to have the exclusive right to use it for recreation and hunting. After defendants have trespassed on plaintiff's leased premises and killed and taken game therefrom, no monetary award would adequately compensate for this loss." 294 So.2d at 895.
See also Indian Bayou Hunting Club, Inc. v. Taylor, 261 So.2d 669 (La.App. 3d Cir. 1972) (Domengeaux, J., concurring in both the original and the rehearing opinions).
We believe the clearing activities sought to be enjoined here would cause even more irreparable injury than the acts of trespass enjoined in Caney, since testimony in the record indicates it would take over 50 years for these trees to regrow. Any remedy other than an injunction would be inadequate in this case.
Defendant contends, however, that plaintiff is precluded from asserting irreparable injury since the plaintiff itself set a monetary value on its damages. Defendant refers to plaintiff's supplemental and amending petition where plaintiff prayed, in the alternative, and in the event the court refused to grant an injunction, for $500,000.00 for the cost of relocation of the camp to a comparable leasehold. This pleading does not preclude a showing of irreparable injury. Our jurisprudence specifically permits pleading of inconsistent demands in the alternative, where the alternative demand is made only on the condition that the primary demand is not granted. See Reine v. Frederick, 79 So.2d 190 (La.App. 1st Cir.1955); McLeod v. Levy, 78 So.2d 549 (La.App.Orl.Cir.1955).
Defendant also contends that injunctive relief is inappropriate where the parties have consented to the payment of liquidated damages. While injunctive relief is not available to enjoin the breach of an agreement where the parties have agreed to liquidated damages in case of a breach, see Beneficial Finance Co. of Monroe v. Aldridge, 200 So.2d 681 (La.App. 2d Cir. *1189 1967), writ refused, 251 La. 220, 203 So.2d 556 (1967), in the instant case the liquidated damages were only triggered by a sale of the property, not by a breach of the lease.
For the above reasons, we affirm the judgment of the trial court at defendant's cost.
AFFIRMED.
COLE, J., respectfully dissents and assigns reasons.
COLE, Judge, dissenting.
I respectfully dissent.
As pointed out in the majority opinion, Mr. Weeks should not have accepted employment in this case, as it was obvious his testimony was necessary relative to facts within his knowledge as former president of the plaintiff corporation. Although plaintiff contends Weeks' testimony was "largely cumulative," the record shows he was the material witness in the case. His testimony related to contested issues such as the validity of the lease, the breach of the lease, and the damages allegedly suffered thereby. He even testified as an expert deer hunter with respect to the effect of the clearing operations on the deer hunting.
Mr. Weeks was Deer Slayers' initial counsel of record in this case; he signed plaintiff's original petition. However, Mr. Joseph Cole was added as a counsel of record for plaintiff on June 30, 1982. Plaintiff also retained Mr. Michael Crow as co-counsel; Mr. Crow executed plaintiff's supplemental and amending petition.
Plaintiff contends it would have suffered a "substantial hardship" under DR5-101(B)(4) if Mr. Weeks had been unable to try the rule when the hearing on the preliminary injunction was held on July 28, 1982. Mr. Crow was unable to attend the hearing because he had another trial the same day. Mr. Cole was allegedly "not involved in the substantive aspects of the case" and was retained as local counsel only to assist with filings in Pointe Coupee Parish. Plaintiff contends it would have had to move for a continuance if Weeks had been disqualified, thus risking the dissolution of the temporary restraining order and permitting the clearing operations to resume. If the continuance had been denied, it is pointed out plaintiff would have been unrepresented.
This argument is not persuasive. The exception to the general proscription of the dual role of lawyer-witness found in DR5-101(B)(4) relates only to hardship which would be caused to the client due to the loss of the distinctive value of a particular attorney. Gutierrez v. Travelers Ins. Co., 358 So.2d 349 (La.App. 4th Cir.1978). Any hardship to plaintiff which would have been caused by Weeks' disqualification was due to plaintiff's own failure to obtain other competent counsel and have him available, not from the loss of any particular expertise of Mr. Weeks as an attorney. Mr. Weeks was aware of the importance of his testimony before the hearing. He should have withdrawn and arranged to have other competent counsel available. And had a continuance been necessary, the trial court could have easily maintained the status quo pending availability of different counsel.
The trial court refused to disqualify Weeks on the grounds that Weeks, as a stockholder of the corporation, had a right to represent himself. In so doing, the trial court erred as a matter of law. As lessee, the plaintiff non-profit corporation itself was the proper party plaintiff; it is the entity with a "real and actual interest" in bringing the action, as is required by La. Code Civ.P. art. 681. Mr. Weeks, as an individual stockholder, did not and could not have sued individually for damages incurred by the corporation. La.Civ.Code art. 432; La.Code Civ.P. art. 690; La.R.S. 12:207(B)(3); Mahfouz v. Ogden, 380 So.2d 646 (La.App. 1st Cir.1979). Thus, Mr. Weeks' representation could not be justified on the basis of him appearing in proper person in his own behalf.
Nor could Weeks' representation be justified on the basis of pro se representation of the corporation itself. The right to act judicially in propria persona through officers or stockholders is not enjoyed by corporations except in a few instances specified in La.R.S. 37:212(C) which are not applicable *1190 here. Otherwise a corporation cannot act judicially in propria persona; it must appear through an attorney admitted to practice law.[1] See Meyer v. Osoline Chemical Co., 11 Orl.App. 203 (1914). The attorney should have been someone other than Mr. Weeks in this case.
In order to protect the public's confidence in the legal profession, the trial court has the discretion, under its duty to supervise members of the bar, to disqualify a party's attorney when it is evident that an ethical violation might occur due to the attorney's continued representation. See In re Gopman, 531 F.2d 262 (5th Cir.1976); Brasseaux v. Girouard, 214 So.2d 401 (La.App. 3d Cir.1968), writ refused, 253 La. 60, 216 So.2d 307 (La.1969). Although disqualification deprives a client of his right to choose the counsel of his choice, the "social need for ethical practice outweighs the party's right to counsel of his choice." United States v. Kitchin, 592 F.2d 900, 903 (5th Cir.1979), cert. denied, 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979). The proper standard of review of a disqualification order is whether or not the trial court abused its discretion. In re Gopman, supra. I would conclude there was an abuse of the court's discretion in this case; disqualification was mandated by the Code of Professional Responsibility.[2]
While the majority has correctly pointed out that the admission of an attorney's testimony in violation of DR5-101 and 102 has generally not been considered reversible error, we find the "extreme circumstances" which justified reversal in Gutierrez, supra, to be present in this case as well. The court in Gutierrez found the plaintiff's attorney to be the material witness in the case, so it annulled the judgment and remanded for a new trial. The court stated it "cannot permit rights to be adjudicated in the context of a violation, albeit unintentional, of the Code of Professional Responsibility, particularly where the provision in question deals with the interest of a client." 358 So.2d at 351.
I would follow Gutierrez in this case. Though the majority felt the defendant suffered no prejudice from Weeks' testimony since the trial judge promised to weigh his testimony in light of Weeks' interest in the case, the extensive nature of Weeks' testimony was such that respect for the legal profession mandates the case should be remanded for a new hearing which is conducted without the appearance of professional impropriety.[3] Plaintiff would have an adequate remedy at the trial level to protect its interests pending the new trial.
NOTES
[1] The right of pro se representation in federal courts is codified at 28 U.S.C. § 1654. This right has been expressly denied to corporations. See Strong Del. Min. Ass'n v. Board of App. of Cook Cty., 543 F.2d 32 (7th Cir.1976), and cases cited therein. The reason for this rule was suggested in Mortgage Commission of New York v. Great Neck Improvement Co., 162 Misc. 416, 295 N.Y.S. 107, 114 (1937):

"Were it possible for corporations to prosecute or defend actions in person, through their own officers, men unfit by character and training, men, whose credo is that the end justifies the means, disbarred lawyers or lawyers of other jurisdictions would soon create opportunities for themselves as officers of certain classes of corporations and then freely appear in our courts as a matter of pure business not subject to the ethics of our profession or the supervision of our bar associations and the discipline of our courts."
It is thus apparent that the right of pro se representation is generally denied to corporations so that their case will be presented by attorneys in an ethical manner. Though Mr. Weeks is an attorney in the present case, his representation of the plaintiff corporation on a pro se basis here would cause an ethical violation, the very reason why this right is denied.
[2] DR5-102 requires that an attorney "shall withdraw" when it becomes obvious that he ought to be called as a witness on behalf of his client. As a disciplinary rule, this rule is mandatory and states a minimum level of conduct below which no lawyer can fall without being subject to disciplinary action. See Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La. 1976).
[3] I do not attribute bad faith to Mr. Weeks in this matter nor do we question his integrity and competency. It is apparent Mr. Weeks at the time did not fully appreciate the significance and ethical considerations of his dual role of lawyer-witness. He obviously thought he was acting in the best interests of his client, which is commendable. While I deem him to have been in good faith, he was nonetheless in an impermissible posture.