# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**08-313**

**DEER FIELD HUNTING CLUB, INC.**

**VERSUS**

**SWAYZE PLANTATION, L.L.C.**

\*\*\*\*\*\*\*\*\*\*\*\*

**APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 07-C-3584-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.

**AFFIRMED.**

**Debra Bracey
3389 Oakland Road
Post Office Box 218
Lakeland, Louisiana 70752
(225) 287-3247
Counsel for Plaintiff/Appellant:
         Deer Field Hunting Club, Inc.**

**Thomas J. DeJean
806 South Main Street
Opelousas, Louisiana 70570
(337) 948-9066
Counsel for Defendant/Appellee:
         Swayze Plantation, L.L.C.**

PETERS, Judge.

Deer Field Hunting Club, Inc. appeals the trial court's denial of its request for the issuance of a permanent injunction restraining Swayze Plantation, L.L.C., from harvesting certain timber and from conducting clearing operations on its property in St. Landry Parish. For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

There is little dispute regarding the underlying facts giving rise to this litigation. On June 16, 1998, Deer Field Hunting Club, Inc. (Deer Field), through its president, Calvin Olivier, leased a 640 acre tract of land in St. Landry Parish, Louisiana, from Dr. Albert E. Hensel, Jr., primarily for the purpose of hunting all legal game. The lease provided for a primary term beginning on July 1, 1998, and ending on June 30, 2001, with an option to renew for an additional three-year period at the expiration of the primary term. On November 13, 2002, Deer Field and Dr. Hensel executed an Amending Agreement which provided for two additional three-year options, potentially extending the lease through June 30, 2011.

On January 10, 2000, Dr. Hensel transferred ownership of the 640 acres subject to the lease to Swayze Farms, L.L.C. On September 12, 2006, Swayze Farms, L.L.C. transferred ownership of the 640 acres to the present owner, Swayze Plantation, L.L.C. (Swayze). It is not disputed by the litigants that the lease entered into between Deer Field and Dr. Hensel is still in full force and effect.

This litigation began on July 17, 2007, when Deer Field filed pleadings seeking to enjoin Swayze from conducting logging operations on the leased property. On July 23, 2007, the trial court granted Deer Field a preliminary injunction prohibiting

1

Swayze from commencing its logging operations, and setting the matter for hearing on August 10, 2007.

The trial court's minutes reflect that, on August 10, 2007, a hearing was held on a Motion to Strike Expert Witness filed by Deer Field and a Motion for Production of Documents filed by Swayze. Deer Field's motion sought to prohibit Jewel L. Willis, an expert in the fields of forestry and land management, from testifying on behalf of Swayze due to an alleged conflict of interest. Swayze's motion sought production of certain bank statements, log records of the taking of game, and a list of the names and addresses of Deer Field's board members. The trial court denied Deer Field's motion to exclude Mr. Willis and Swayze's motion for Deer Field to produce its bank statements, but ordered Deer Field to produce its log records of the taking of game and a list of the names and addresses of its board members.

The permanent injunction issue then went to trial beginning on September 17, 2007. After a two-day trial, the trial court took the matter under advisement. On October 18, 2007, the trial court issued written reasons for judgment wherein it denied Deer Field's request for a permanent injunction. The trial court signed a judgment to this effect on November 13, 2007, and Deer Field perfected this appeal, asserting the following assignments of error:

A. The [t]rial [c]ourt erred in disregarding [Swayze]'s principal obligations of protecting [Deer Field]'s right to peaceful possession pursuant to [La.Civ.Code art.] 2682[1] and [La.Civ.Code art.] 2700.[2]

---

[1]Louisiana Civil Code Article 2682 provides: "The lessor is bound: (1) To deliver the thing to the lessee; (2) To maintain the thing in a condition suitable for the purpose of which it was leased; and (3) To protect the lessee's peaceful possession for the duration of the lease."

[2]Louisiana Civil Code Article 2700 provides:

The lessor warrants the lessee's peaceful possession of the leased thing against any disturbance caused by a person who asserts ownership, or right to possession of, or any other right in the thing.

B. The [t]rial [c]ourt erred in failing to apply [La.Civ.Code art.] 2690[3] which prohibits [Swayze] from making alterations in the property.

C. The [t]rial [c]ourt erred in [its] interpretation of the lease agreement as allowing for logging and/or clearing operations where no explicit language addresses such operations; the [t]rial [c]ourt erred in failing to apply contract law, specifically [La.Civ.Code arts.] 2050,[4] 2053,[5] and 2056,[6] in deriving said interpretation of the lease agreement.

D. The [t]rial [c]ourt erred in misapplication or non-application of the principle of irreparable harm to [Deer Field]. Instead, the court applies the concept of irreparable harm to the property itself, or to wildlife habitat, and to hunting production "in the future[.]"

E. The [t]rial [c]ourt erred in determining that [Deer Field] did not prove irreparable harm because it failed to apply *Deer Slayers, Inc. [v.] Louisiana Motel and Investment Corp.*, 434 So.2d 1183 [(La.App. 1 Cir.), *writ denied*, 440 So.2d 151 (La.1983),] as case precedent which established evidence standards of irreparable harm and [l]essor's warranty of peaceful possession where facts are parallel to this case on appeal.

F. The [t]rial [c]ourt abused its discretion and/or committed manifest error in regard to use of expert testimony in the

---

In a residential lease, this warranty encompasses a disturbance caused by a person who, with the lessor's consent, has access to the thing or occupies adjacent property belonging to the lessor.

[3]Louisiana Civil Code Article 2690 provides: "During the lease, the lessor may not make any alterations in the thing."

[4]Louisiana Civil Code Article 2050 provides: "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."

[5]Louisiana Civil Code Article 2053 provides: "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."

[6]Louisiana Civil Code Article 2056 provides: "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."

following particulars:

1. Accepting two witnesses as experts that are representatives of [Swayze]'s planned logging operation, and therefore have a self-interest in the outcome of the trial. Furthermore, the court weighed their testimony equally or even greater than a non-biased expert witness with greater qualifications and has no self-serving interest in the outcome of the trial.

2. Allowing a representative of the logging operation to testify as an expert witness (or as any witness) for [Swayze] over [Deer Field]'s objections when he was not on any witness list either exchanged by counsel for both parties or presented to the court.

3. Accepting an expert witness for [Swayze] with a conflict of interest over the objection of [Deer Field]. [Deer Field] had previously consulted with and was advised on the matter being litigated by this witness' business partner in an active [limited liability company].

4. Considering expert testimony outside the scope of expert's qualifications over the objection of [Deer Field].

5. The trial court abused it's [sic] discretion in rejecting the testimony of [Deer Field]'s expert witness, a Ph.D. in Forest Resources[.]

**OPINION**

In *Mary Moe, L.L.C. v. Louisiana Board of Ethics*, 03-2220, pp. 9-10 (La. 4/14/04), 875 So.2d 22, 29, the supreme court set forth the standard of review applicable to the issuance of a permanent injunction:

The standard of review for the issuance of a permanent injunction is the manifest error standard. *Parish of Jefferson v. Lafreniere Park Foundation*, 98-146 (La.App. 5 Cir. 7/28/98), 716 So.2d 472, 478; *Pogo Producing Co. v. United Gas Pipe Line Co.*, 511 So.2d 809, 812 (La.App. 4th Cir.1987), *writ denied*, 514 So.2d 1164 (La.1987). The issuance of a permanent injunction takes place only after a trial on the

4

merits in which the burden of proof is a preponderance of the evidence, but a preliminary injunction may be issued on merely a *prima facie* showing by the plaintiff that he is entitled to relief. *Werner Enterprises, Inc. v. Westend Dev. Co.*, 477 So.2d 829, 832 (La.App. 5th Cir.1985); *Kliebert Educational Trust v. Watson Marines Services, Inc.*, 454 So.2d 855 (La.App. 5th Cir.1984), *writ denied*, 457 So.2d 682 (La.1984); *Federal Nat'l Mortg. Ass'n. v. O'Donnell*, 446 So.2d 395, 399 (La.App. 5th Cir.1984); *General Motors Acceptance Corp. v. Daniels*, 377 So.2d 346, 348 (La.1979).

In its written reasons for judgment, the trial court stated, in pertinent parts:

> The essential issue in this case is the interpretation of Paragraph No. 5 of the lease between Deer Field and Dr. Albert Hensel. The last sentence of Paragraph No. 5 says that "lessor retains the right to use and develop the lease premises itself or through other lessees for other purposes."
>
> . . . .
>
> The Court finds that the interpretation of Paragraph [No.] 5 of the lease agreement which says "other purposes" can only mean <u>logging timber</u>.
>
> . . . .
>
> The Court believes the experts in this case that testified that logging the property will only make the hunting production better in the future. What is proposed by the logging company makes good sense.
>
> The Court finds that Deer Field Hunting Club will in no way lose hunting privileges by logging the property. The deer will still be there. The squirrel and rabbit will still be there.
>
> Although by [sic] logging will create some inconvenience, it will in no way completely disturb the hunting for deer for the next four years.[7]
>
> Mr. Olivier knew this property was going to be logged from the initial lease agreement. The property was logged in 2001. . . . [Deer Field] didn't complain at that time.
>
> . . . .
>
> The Court finds that the nature of the property is not being altered here in this case as was done in the [*Deer Slayers*] case.

Deer Field's arguments in its brief filed with this court primarily address the

---

[7]Deer Field currently holds a renewal option extending its lease of the property at issue herein until June 30, 2011.

merits of the trial court's ruling denying its request for a permanent injunction to enjoin Swayze from harvesting timber on the leased property. According to Deer Field, "[t]he operations [Swayze] propose no doubt are violations of lease laws, and will result in interruption, disturbance, and destruction of wildlife habitat. This constitutes irreparable harm to [Deer Field] because their loss cannot be measured by pecuniary standards." Deer Field also asserts that the trial court incorrectly interpreted and mistakenly relied upon paragraph 5 of the June 16, 1998 written agreement between it and the former landowner, Dr. Hensel. Paragraph 5 of the "Hunting and Fishing Lease" states:

> This lease is for hunting and fishing only, and Lessee shall conduct its hunting and fishing operations on this land in a manner comfortable with good conservation and all applicable laws. Lessor retains the right to use and develop the lease premises itself or through other lessees for other purposes.

Swayze suggests the trial court correctly interpreted Paragraph 5, and that Deer Field both procured and accepted these terms when Mr. Olivier, acting on behalf of Deer Field, (1) suggested to Dr. Hensel that a lease agreement be reduced to writing, (2) hired the attorney who drafted the document, and (3) signed the lease binding Deer Field to the terms contained therein.

At the September 2007 trial, Dr. Hensel supported Swayze's position, testifying that Mr. Olivier was aware at the time the original lease was executed in 1988 that the harvesting of timber on the property was a future possibility. In fact, Dr. Hensel testified that in 2001 he harvested a considerable amount of timber on the property and Deer Field voiced no objection.

Finally, contrary to Deer Field's assertion, we do not find *Deer Slayers, Inc.*, 434 So.2d 1183, to be analogous to the instant matter. *Deer Slayers* dealt with an

6

appeal from an interlocutory judgment awarding the plaintiff hunting club a preliminary injunction restraining the lessor/defendant from harvesting certain timber and from conducting clearing operations. The plaintiff in *Deer Slayers, Inc.* had leased 1,800 acres for hunting and fishing purposes, and the lessor/defendant decided to clear 800 to 900 of the total 1,800 acres for agricultural purposes. This decision to convert that percentage of the whole to agricultural land was found to be a breach of the lease agreement. Such extensive conversion is not the case in the matter before this court.

Swayze's intent was to selectively cut, not clear cut. It agreed to conduct its logging operations at a time not intrusive on Deer Field's hunting season(s), and its experts testified that the harvesting of timber would be done in a manner which would enhance the wildlife, not diminish it. Thus, we do not find that the trial court erred denying Deer Field's request for a permanent injunction.

### Expert Witness Testimony

In its final assignment of error, Deer Field argues that the trial court erred in its decisions relating to the admission of expert testimony. Specifically, it complains that the trial court erred in allowing Conner Vincent House, Nelson Grant Guillory, and Jewell L. Willis to testify for Swayze and in not accepting the testimony of Deer Field's expert, Dr. Michael Chamberlain.

The use of expert testimony is governed by La.Code Evid. art. 702 which provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Furthermore, the trial court

7

has wide discretion in determining whether to allow a witness to testify as an expert, and its judgment will not be disturbed on appeal unless it is clearly erroneous. *Abshire v. Wilkenson*, 01-75 (La.App. 3 Cir. 5/30/01), 787 So.2d 1158.

Mr. House and Mr. Guillory were recognized by the trial court as experts in the field of forestry. The record establishes also that Mr. House had been retained by Swayze to manage the planned logging operation on its behalf, and that Mr. Guillory was the planned purchaser of the timber to be harvested. Deer Field charges that both experts should not have been allowed to testify because they were incapable of having unbiased opinions due to their financial stakes in the litigation. Thus, Deer Field does not challenge their expertise or the relevance of their testimony. Rather, it challenges their credibility.

In considering Deer Field's argument on this issue, we note that La.Code Evid. art. 607(A) provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him." However, "[t]he credibility of a witness may not be attacked until the witness has been sworn[.]" La.Code Evid. art. 607(B). Furthermore, "a party may question any witness as to his relationship to the parties, interest in the lawsuit, or capacity to perceive or to recollect." *Id.* Thus, Deer Field's remedy is to question the witness as to the suspect relationships, not to have the witness precluded from testifying. "The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound." *Sportsman Store of Lake Charles, Inc. v. Sonitrol Sec. Sys. of Calcasieu, Inc.*, 99-201, p. 6 (La. 10/19/99), 748 So.2d 417, 421. We find no error in the trial court's decision to allow Mr. House and Mr. Guillory to testify.

Deer Field also argues that the trial court erred in allowing Mr. House to

testify because he had not been listed on Swayze's pre-trial witness list. With regard to this complaint, we note that Mr. House was questioned at length during the first day of trial, and without objection by Deer Field. It was not until the beginning of the second day of trial that Deer Field voiced any complaint concerning Mr. House's failure to appear on the pre-trial witness list. "To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony, and state the reasons for the objection." *LaHaye v. Allstate Ins. Co.*, 570 So.2d 460, 466 (La.App. 3 Cir.1990), *writ denied*, 575 So.2d 391 (La.1991) (citing *Pitts v. Bailes*, 551 So.2d 1363 (La.App. 3 Cir.), *writs denied*, 553 So.2d 860 (La.1989), 556 So.2d 1262 (La.1990)). In this case, the record establishes that this issue was not properly preserved; therefore, it is not before this court for appellate review, and we decline to consider it. *See* La.Code Evid. art. 103; *Petre v. State ex rel. Dep't of Transp. and Dev.*, 00-545, 00-546 (La.App. 3 Cir. 12/29/00), 775 So.2d 1252, *aff'd*, 01-876 (La. 4/3/02), 817 So.2d 1107.

Next Deer Field asserts that the trial court erred in allowing Mr. Willis to testify. As previously stated, Mr. Willis was recognized as an expert in the fields of forestry and land management. He had apparently been involved in a partnership with Mike Taylor, an individual with whom Mr. Olivier claims to have discussed the situation on behalf of Deer Field. Deer Field asserts this created a conflict of interest in Mr. Willis when he testified for Swayze. The evidence presented at the pre-trial motion on this issue established that whatever relationship Mr. Willis had with Mr. Taylor had terminated and there had been no communication between the two men concerning this particular case. We find no manifest error in the trial court's findings in this regard, and reject this argument.

9

Finally, Deer Field contends that the trial court erred in failing to give weight to the testimony offered by its expert, Dr. Michael Chamberlain, an ecologist.[8] "Where the testimony of expert witnesses differ, it is for trier of fact to determine the most credible evidence and a finding of fact in this regard will not be overturned absent manifest error." *Opelousas Prod. Credit Ass'n v. B.B. & H., Inc.*, 587 So.2d 812, 814 (La.App. 3 Cir. 1991) (citing *Nailor v. Int'l Harvester Co.*, 430 So.2d 784 (La.App. 5th Cir.1983), *writ denied*, 437 So.2d 1148 (La.1983)). Thus, we find no manifest error in the trial court's acceptance of the testimony of Swayze's experts rather than Deer Field's experts.

## DISPOSITION

For the foregoing reasons, we affirm the trial court's judgment in all respects. We tax all costs of this appeal to Deer Field Hunting Club, L.L.C.

**AFFIRMED.**

---

[8]According to Dr. Chamberlain, "Ecology [is] the broader study of animal behavior. Factors that influence animal behavior, habitat requirements."