615 So.2d 484 (1993)
Shirley HERNANDEZ, et al.
v.
CONTINENTAL CASUALTY INSURANCE CO., et al.
No. 92-CA-0971.
Court of Appeal of Louisiana, Fourth Circuit.
February 26, 1993.
Rehearing Denied April 20, 1993.
*485 Robert L. Manard, New Orleans, for plaintiffs-appellees Shirley Hernandez, et al.
Scott G. Jones, Christy A. Zeringue, Hulse, Nelson & Wanek, New Orleans, for defendant-appellant Continental Cas. Ins. Co., et al.
Before KLEES, LOBRANO and PLOTKIN, JJ.
KLEES, Judge.
This appeal stems from a personal injury suit filed in relation to an automobile collision occurring on November 5, 1989. Plaintiffs, Carlos Hernandez and his wife Shirley Hernandez, instituted suit against defendants, Jeanna E. Cefalu and her insurer, Continental Casualty Company, to recover damages sustained in the collision. After a bench trial, the Honorable Gerald P. Fedoroff found defendant, Jeanna Cefalu 100% at fault in causing the accident, and rendered judgment in favor of plaintiff, Shirley Hernandez in the sum of $280,000 for general and special damages. From this judgment, the defendants appeal and the plaintiffs answer. After reviewing the record and applicable law, we amend the trial court's special damage award as to Mrs. Hernandez's future medical expenses, and otherwise affirm the judgment as amended.
The accident in question occurred near the intersection of Metairie Road and Pontchartrain Boulevard in Orleans Parish. The Hernandezes were traveling east on Metairie Road approaching the Pontchartrain intersection when Jeanna Cefalu, who was traveling west on Metairie Road, made an illegal left hand turn into the Hernandezes' path. Mr. Hernandez, who was driving at the time, was unable to avoid the ensuing collision. The only citation was issued to Ms. Cefalu for making an illegal left hand turn. While Mr. Hernandez and Ms. Cefalu escaped relatively unharmed, Mrs. Hernandez was seriously injured. Upon impact, Mrs. Hernandez was violently thrown forward striking her knees on the dashboard and her head on the windshield, with force enough to shatter it.
After the accident, Mrs. Hernandez was transported to Mercy Hospital where she was treated for lacerations to her head. The emergency room staff attempted to remove all of the glass from Mrs. Hernandez's forehead for approximately thirty minutes and then released her. Four days after the accident, Mrs. Hernandez sought chiropractic care from Dr. William Batherson, complaining of headaches, lower back pain, cervical pain, knee pain, trembling of the left arm, and stomach discomfort. After four months of conservative treatment for Mrs. Hernandez's spinal injuries failed to alleviate her lower back and leg pain, Dr. Batherson recommended that she seek treatment from Dr. Toussaint Leclercq, a neurosurgeon.
When Mrs. Hernandez first visited Dr. Leclercq on March 28, 1990, her chief complaint was severe lower back pain, as well as pain in her leg and neck. In order to properly diagnose Mrs. Hernandez's lower back pain, Dr. Leclercq ordered an MRI of the lower back which revealed a central and left paracervical L5-S1 herniated disc. Mrs. Hernandez was then given the choice *486 of two courses of treatment for the herniated disc; she could undergo surgery, or she could forego the surgery and continue conservative treatment. Due to her apprehension concerning surgery, Mrs. Hernandez chose to continue conservative treatment. However, after seven months of persistent pain, Mrs. Hernandez reconsidered this course of treatment, and decided to have the surgery.
Until the day that she was admitted to the hospital for surgery, Mrs. Hernandez continued working at Naturalizer Shoes as a salesperson. On October 1, 1990, Dr. Leclercq performed a microsurgical disc excision between the L5-S1. Four days later, Mrs. Hernandez was released from the hospital. Dr. Leclercq's post surgical examinations revealed that Mrs. Hernandez was progressively improving, and as long as she continued to improve at the current rate, she was predicted to return to work by April of 1991.
However, Mrs. Hernandez's recuperation was hindered in December of 1990 when she was involved in two rear-end collisions. Although these relatively minor accidents did not cause any additional disabling or permanent pathology to the spine, the trauma did aggravate Mrs. Hernandez's overall condition. Because Mrs. Hernandez was complaining of more severe neck pain, Dr. Leclercq ordered an MRI of the cervical spine which revealed a bulging disc at the C4-C5 and C5-C6 levels. Dr. Leclercq testified that this injury was probably caused by the subsequent accidents, but because he did not have an MRI done on the cervical spine after the first accident, there was no documented proof. In addition to the neck injury, Dr. Leclercq testified that the subsequent accidents stretched the scar tissue which developed after surgery and resulted in exacerbation of her lower back pain. Essentially, Dr. Leclercq testified that the subsequent accidents did not cause any new injuries, but only aggravated Mrs. Hernandez's recuperation from surgery.
The status of Mrs. Hernandez's present condition includes a ten to fifteen percent disability for her lower lumbar injuries. She also complains of some residual pain and movement restriction. At this time, Dr. Leclercq indicates no further neurosurgical treatment for Mrs. Hernandez's condition. As for the pain and restricted movement, she is currently undergoing conservative care under Dr. Batherson's supervision.
In addition to Mrs. Hernandez's physical trauma, she has suffered psychologically from the three accidents. Because her physical injuries prevent her from working and functioning in her customary manner, she has become depressed due to feelings of worthlessness. Since the accidents, Mrs. Hernandez also experiences symptoms of anxiety especially while driving or riding as a passenger in a car. To combat these symptoms, Mrs. Hernandez is being treated by Dr. Blotner, a psychiatrist specializing in the emotional effects of trauma and surgery. Dr. Blotner's prognosis is favorable, and he testified that she could be essentially cured with therapy.
After hearing all of the evidence, the trial judge found that defendant, Ms. Cefalu, was solely at fault in causing the November 5, 1989 accident. As this accident was the most severe of the three, he attributed it as the cause of any disabling or permanent low back pathology. The trial judge awarded $200,000 in general damages to compensate Mrs. Hernandez for her pain, suffering and psychological reaction to the accident. Special damages of $26,000 were awarded for Mrs. Hernandez's lost wages. Because the trial court found that Mrs. Hernandez will be able to maintain her previous earnings by doing sedentary work of which she is now capable or for which she is easily trainable, she was not awarded any future lost earnings. But, because Mrs. Hernandez has lost the freedom of choosing a more strenuous career, she was awarded $25,000.
Mrs. Hernandez was awarded $19,418 for past medical expenses as of December of 1990. Since December of 1990 accidents, Mrs. Hernandez incurred medical expenses of $11,223. However, the court allocated only half of these expenses to the November 5, 1989 accident, for a past medical expense recovery of $25,029. As for future *487 medicals, Mrs. Hernandez was awarded $4,000 for future treatment by Dr. Blotner.
On appeal, both plaintiffs and defendants assert that the trial court committed manifest error in determining causation and in calculating the damage award. These determinations are factual findings which are afforded great deference by appellate courts. The standard of reviewing factual findings is summarized by the Louisiana Supreme Court in Rosell v. ESCO, 549 So.2d 840 (La.1989), writ denied, 561 So.2d 105 (La.1990):
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellant court may feel that its own evaluations and inferences are as reasonable. (Citations omitted)
Rosell, supra 549 So.2d at 844.
We will first review the trial court's determination that the November 5, 1989 accident caused Mrs. Hernandez's permanent injuries and the majority of her damages. Plaintiffs argue the trial court was erroneous in apportioning any of Mrs. Hernandez's damages to the subsequent accidents, and thus, the defendants should be accountable for the totality of Mrs. Hernandez's damages. Conversely, defendants argue that the trial court completely disregarded the occurrence of the subsequent accidents, and committed manifest error by not specifically apportioning a percentage of the plaintiff's damages to the December of 1990 accidents. To support this argument, Defendants cite Buccola v. Marchese, 599 So.2d 892 (La.App. 4th Cir.1992).
In Buccola, the plaintiff was involved in two separate accidents. In a suit against the first defendant, the trial court found that the defendant was liable for the whole. This Court reversed the trial court finding that when there are two accidents the damages should be apportioned if possible, although the apportionment has some degree of inherent arbitrariness. Buccola, supra at 895.
The trial court determined that the first accident was the most severe and debilitating of the three. The record supports the finding that the subsequent accidents did not cause Mrs. Hernandez's extensive physical and psychological injuries, but only temporarily increased the amount of physical pain and mental anguish that she was already experiencing. The record shows that when Mrs. Hernandez was twice rear-ended in December of 1990, she was still recuperating from the back surgery performed less than two months earlier. Additionally, Mrs. Hernandez's treating physicians unequivocally testify that Mrs. Hernandez's permanent and disabling injuries were caused by the first accident, and the damages caused by the second two accidents were negligible.
However, the trial court did give some weight to the subsequent accidents by holding defendants liable for only half of the medical expenses incurred after December of 1990. He recognized that some of the additional medical tests were done to determine whether the second set of accidents caused any additional injuries. In light of this, the trial court only attributed 50% of the proven medical expenses to the defendants. The trial court recognized that even if Mrs. Hernandez was not involved in these accidents, she would have still sought treatment from Dr. Leclercq for neurological examinations, Dr. Batherson for chiropractic care, and Dr. Blotner for psychological care.
In sum, because the trial court's determination as to causation was a factual finding which was well grounded in the record, we cannot find that it is clearly wrong or manifestly erroneous.
Next, both defendants and plaintiffs argue that the trial court committed manifest error in calculating the general and special damage awards.
Under Louisiana law, the trial court has much discretion in assessing damages. La.C.C. Art. 1999. Before an appellate *488 court can disturb a damage award made by the trial court, the record must clearly reveal that the trial court abused its discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Only after analysis of the facts and circumstances peculiar to the case at issue may a reviewing court determine that the award is excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979). Once this determination is made, the appellate court may resort to prior awards for purposes of calculating what would be an appropriate award for the present case. Reck, supra.
Accordingly, the record has been reviewed to determine whether it supports an award of $200,000 in general damages for pain and suffering and disability arising out of Mrs. Hernandez's injuries. Mrs. Hernandez, her husband, and several experts testified as to her pain and suffering.
After the initial trauma associated with the automobile accident, Mrs. Hernandez was taken to the Mercy Hospital emergency room where she was treated for lacerations to her head. Three years after the accident, she still has scarring on her forehead as a result of these injuries. Four days after the accident, Mrs. Hernandez was prompted by pain in her lower back, legs, head, and neck to seek chiropractic care from Dr. Batherson. After four months of unsuccessful conservative treatment, Mrs. Hernandez sought treatment from Dr. Leclercq. The record indicates that even after the microscopic back surgery, Mrs. Hernandez was required to undergo several painful tests to determine the cause of her persistent pain. These tests revealed that Mrs. Hernandez's surgery was only partially successful because she developed a certain amount of scar tissue which restricts the natural motion in the lower lumbar area.
In addition to Mrs. Hernandez's physical injuries, she has also experienced psychological difficulties. While the two testifying psychiatrists disagree as to the extent of Mrs. Hernandez's psychological injuries, they both agree that Mrs. Hernandez suffers from various symptoms of depression and anxiety. Dr. Blotner testified that Mrs. Hernandez suffers from Post Traumatic Stress Disorder and major depression, while the defendants' psychiatrist, Dr. Colomb, testified that her condition does not warrant this diagnosis.
Generally, Mrs. Hernandez's symptoms of anxiety include: panic attacks, intrusive recollections of the accidents, fear of driving, sleeplessness, and crying spells. She also suffers from depression and feelings of restrictions on her usual activities, and the changes in her marriage since her accident.
Plaintiffs argue that the trial court erred in omitting compensable and proven elements of general damages from its judgment. Specifically, plaintiffs argue that the court failed to recognize and compensate Mrs. Hernandez's severe depression, Post Traumatic Stress Disorder, and mental anguish stemming from the accident. However, the trial judge did recognize Mrs. Hernandez's psychological damages, and specifically included these damages in the general damage award of $200,000. After reviewing Mrs. Hernandez's particular injuries and the resulting consequences, we find that an award of $200,000 in general damages was well within the trial court's "much discretion."
Both plaintiffs and defendants argue that the trial court erred in its calculation of special damages. Special damages are those which can be fixed to pecuniary certitude. American Druggists Co. v. Henry Contracting Inc., 505 So.2d 734 (La.App. 3rd Cir.1987), writ denied, 511 So.2d 1156 (La.1987). Upon review of damage awards, if a trial court omits compensable and proven elements of damages, the appellate court must exercise its own discretion to make a res nova determination of additional damages to compensate for the omitted elements. Jackson v. United States Fidelity and Guaranty Co., 382 So.2d 223 (La.App. 3d Cir.1980), writ denied, 385 So.2d 275 (La.1980).
Upon reviewing the special damage awards, we find that all elements of special damages awarded by the trial court are warranted. However, the trial court has *489 omitted to award special damages for Mrs. Hernandez's for proven future medical care. Dr. Leclercq and Dr. Batherson agreed that Mrs. Hernandez's injuries were probably permanent, and that she would continue to experience residual pain indefinitely. To combat these problems, both Dr. Leclercq and Dr. Batherson recommended that she undergo chiropractic treatment as long as it afforded her relief. Mrs. Hernandez testified that she is still experiencing pain even three years after the accident and that her chiropractic treatments do afford her relief. Because this evidence and testimony was not refuted by the defendants, we find that the plaintiffs have clearly demonstrated the need for future medical care. In light of these findings, this Court is required to amend the award to provide for future medical care.
Dr. Batherson testified that Mrs. Hernandez would benefit from treatment every one to two weeks, at $45 per visit, for the rest of her life, as long as it affords her relief. Given the evidence in the record, we do not find that Mrs. Hernandez will require chiropractic care for the remainder of her life. However, we do find that she should be provided with ten years of weekly treatments. Accordingly, we amend the award to provide a special damage award for future medical care in the sum of $23,400.
The final issue on appeal is whether plaintiffs are entitled to recover penalties pursuant to La.R.S. 22:1220. In pertinent part, La.R.S. 22:1220 provides:
A. An insurer including but not limited to a foreign line and surplus line insurer owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to any writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater ...
In dismissing the plaintiffs' claim under R.S. 22:1220, the trial court held:
Plaintiff claims penalties under R.S. 22:1220. This statute has been a source of considerable consternation. In another case I had found it so confusing as to be ineffective as a penal statute. Counsel for plaintiff have changed my mind. They argue persuasively that subsection "A" imposes on the insured two distinct duties. The first duty is owed to the insured, and the second to a third-party claimant. But the duty to the claimant, as I read the statute, is to make a reasonable effort to settle claims. This presupposes a reasonable settlement offer by the claimant which the insurer arbitrarily rejects. I do not read the statute to require a McDill unconditional tender. The focus then is on whether the insurer arbitrarily has refused an offer it was bound to consider reasonable. I conclude it has not and plaintiff's claim for penalties will be denied.
*490 The application of R.S. 22:1220 to a non insured third party claimant has been contested in this circuit on supervisory writs in Jerry L. Boatner, et al. v. State Farm Mutual, et al., No. 92-C-1248. In Boatner, the majority found that since R.S. 22:1220 is penal in nature, it must be strictly construed, and thus, the five acts specified in paragraph (B) must be exclusively construed. Therefore, in order to assert a claim under R.S. 22:1220, a plaintiff must allege that the defendant-insurer knowingly committed one of the stated acts. When the foregoing rationale is applied to the instant case, we find that the plaintiffs have failed to assert that the defendant insurer has committed any of the proscribed actions contained in paragraph (B). In conclusion, we agree with the trial judge that plaintiff's R.S. 22:1220 claim should be dismissed; however, we substitute our rationale which is consistent with the majority opinion in Boatner.
Based on the foregoing analysis, we amend the trial court's special damage award to include an additional $23,400 for future medical care. The award now consists of $200,000 in general damages and $103,429 in special damages, for a total of $303,429. Additionally, in dismissing the plaintiff's R.S. 22:1220 claim, we substitute the trial court's rationale with our own. In all other respects, the trial court judgment is affirmed. The judgment, as amended, is affirmed.
PLOTKIN, J., dissents with written reasons.
PLOTKIN, Judge, dissents with written reasons:
Because I disagree with the majority's decision concerning the duty of an insurer to make reasonable efforts to settle claims of third-party claimants under the provisions of LSA-R.S. 22:1220 and for other reasons discussed below, I respectfully dissent.
Duty to settle under LSA-R.S. 22:1220
The majority summarily dismisses the plaintiffs' argument that the trial court erred in dismissing their claim against Continental Casualty based on the insurer's failure to make reasonable efforts to settle as required by LSA-R.S. 22:1220(A) by adopting the majority decision in an unpublished supervisory writ application, Boatner v. State Farm Mutual, No. 92-C-1248 (La.App. 4th Cir.1992), which is not precedential. Since the majority decision in Boatner was fatally flawed, it should not be adopted in this decision since it will now become the law of the circuit.
LSA-R.S. 22:1220 provides, in pertinent part, as follows:
A. An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to any writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever *491 is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
The above statute significantly expanded the affirmative duties owned by insurance companies, adding a whole new group of persons to whom a duty is owed. The first sentence of subsection (A) is clearly intended to regulate an insurance company's duty of good faith and fair dealing to insured parties, a duty which encompasses a cluster of well-understood legal obligations. The second sentence of subsection (A) expands an insurance company's affirmative duties by imposing a duty to adjust and settle claims, a duty which is separate from the general duty of good faith and fair dealing. The duty imposed in the second sentence extends not only to insured persons, but also to third parties claimants.
However, despite the express language of the second sentence of subsection (B), which specifically imposes on insurance companies a duty to make reasonable efforts to settle claims in favor of both named insureds and third-party claimants, both the majority opinion in Boatner and the majority opinion in this case disallow a claim based on the plaintiffs' allegation that the defendant insurance company failed to make a reasonable effort to settle the claims.
In both cases, the majority finds that the five proscribed actions listed in paragraph B are the exclusive methods by which an insurance company can violate the duties imposed by the article. However, that analysis fails to recognize the fact that the two sentences in subsection (A) impose two separate duties on the insurance company. The error in that interpretation is demonstrated by the conclusion that the actions listed in subsection (B) are conclusive. That conclusion is obviously incorrect because none of the actions listed relate directly to a duty to adjust and settle claims. Reading the list as conclusive makes the second sentence of subsection (A) meaningless, as both majority opinions demonstrate. The fact that the majority finds that the plaintiffs claims should be dismissed because they failed to assert that the insurer committed one of the proscribed actions, despite the fact that they specifically allege that the insurer breached its duty to settle their claim, clearly reveals the error in the analysis. Obviously, the claims of plaintiffs who allege that an insurance company breached a duty specifically imposed by the wording of the statute should not be summarily dismissed.
I believe that the legislature obviously intended that the actions listed in subsection (B) be considered illustrative examples of the most common ways insurance companies breach the general duty of good faith and fair dealing established by the first sentence of subsection (A). Subsection (B) does not refer to the duty imposed by the second sentence of subsection (A), the duty to adjust and settle, because those duties are self explanatory.
Prior to enactment of the statute, insurance companies had no duties to third-party claimants who were not named insureds under the insurance contract. LSA-R.S. 22:1220 was obviously added for the express purposes of including that new class of beneficiaries and of including a separate duty to adjust and settle claims. The majority's decision in this application severely undermines the obvious purpose of the statute.
Unquestionably, the defendant in this case made no reasonable effort to settle the plaintiffs' third-party claims until after the trial had begun. The statute in question was obviously designed for this exact situationwhere the defendant failed to contest liability, but nevertheless failed to make a reasonable effort to settle. The only issue in this case was quantum; Mrs. Hernandez's medical expenses were well documented. Under my interpretation of the statute, these plaintiffs would unquestionably be entitled recovery. Accordingly, I would reverse the trial court judgment dismissing the plaintiffs' claim based on LSA-R.S. 22:1220. Since any settlement offers made are not a part of the record on appeal, I would remand the case to determine damages on this issue.

*492 Quantum

I also disagree with the majority's decision to omit any discussion of plaintiffs' arguments that the trial court failed to consider Mrs. Hernandez's loss of enjoyment of life in setting the general damage award. Nothing in the trial court's reasons for judgment indicates that the judge awarded the plaintiffs any recovery for this item of damages. However, the majority simply finds that the trial court "award of $200,000 in general damages was well within the trial court's much discretion," without addressing that omission.
Louisiana courts have recognized that loss of enjoyment of life is a separate element of compensable general damages which must be determined by the trial judge and which is not necessarily included in an award for general pain and suffering. The seminal case on this issue is Andrews v. Mosley Well Service, 514 So.2d 491 (La. App. 3d Cir.), writ denied 515 So.2d 807 (La.1987), in which the court affirmed a jury award which included damages for both pain and suffering and for loss of enjoyment of life. This court has also affirmed a separate award for loss of enjoyment of life when the plaintiff demonstrated a deterioration in his former lifestyle. See Bernard v. Royal Insurance Co., 586 So.2d 607 (La.App. 4th Cir.), writ denied 589 So.2d 1058 (La.1991).
In the instant case, the plaintiffs presented uncontroverted testimony that Mrs. Hernandez suffered a deterioration in her former lifestyle as a result of the accident. Evidence that her marriage and family life had been adversely effected was presented, as was evidence of depression, anxiety attacks, and mental anguish. The plaintiffs also assert that Mrs. Hernandez suffers severe physical limitations, which prevent her from participating in athletic endeavors, performing household chores, or engaging in sexual activities. Under the circumstances, I believe the plaintiffs are entitled to an award for Mrs. Hernandez's loss of enjoyment of life.
The majority also fails to discuss the defendant's arguments concerning the apportionment of Mrs. Hernandez's wage losses following the December 1990 accidents. The trial court apportioned the medical expenses for that period, apparently recognizing the fact that Mrs. Hernandez's recovery was detrimentally affected by those accidents, but failed to apportion the lost wages. I would hold that half of the plaintiffs' lost wages for the period of time following the subsequent exacerbating accidents should be attributed to those accidents.