# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-435


**EARL LEE SCOTT AND FELICIA A. SCOTT**

**VERSUS**

**JAMES RAY ROBERTS AND STATE OF LA, THRU THE DOTD, ET AL.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2000-0957-A
HONORABLE STUART S. KAY, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


**MARC T. AMY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Marc T. Amy, and Glenn B. Gremillion, Judges.


**AFFIRMED.**


**Ralph Jerone Williams**
**Elizabeth Brooks Hollins**
**Louisiana Department of Justice**
**901 Lakeshore Drive, Suite 820**
**Lake Charles, LA 70601**
**(337) 491-2844**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
   **State of Louisiana, through the Department of Transportation**
   **and Development**
   **James Ray Roberts**

John Ezell Jackson
Post Office Box 1239
Lake Charles, LA 70602
(337) 433-8866
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
Earl Lee Scott
Felicia A. Scott

Charles A. Sam Jones, III
Post Office Box 995
DeRidder, La 70634-0995
(337) 463-5532
**COUNSEL FOR PLAINTIFF/APPELLEE:**
Earl Lee Scott
Felicia A. Scott

AMY, Judge.

Plaintiffs, husband and wife, seek damages resulting from an automobile accident in which their vehicle, driven by the wife, was struck by a truck driven by an employee of the State of Louisiana, Department of Transportation and Development, and belonging to the State. Plaintiffs moved for and were granted summary judgment as to liability of the State, and the matter proceeded to trial as to damages. A jury awarded plaintiffs special and general damages, as well as compensation for loss of consortium. The State appeals, asserting that the jury erred in awarding excessive general damages. For the following reasons, we affirm.

**Factual and Procedural Background**

The accident from which the instant matter arose occurred at around midday on October 7, 1999. According to the record, Felicia Scott, plaintiff-appellee herein, was driving on the inside lane of westbound US 171 in DeRidder, Louisiana. At the same time, James Roberts, an employee of the State of Louisiana, Department of Transportation and Development (DOTD), was driving a state-owned 1991 Ford F-350 in the right lane of westbound US 171. Roberts negotiated a left turn in an attempt to enter a parking lot. As Roberts turned, he entered the inside lane of US 171, striking the front right side of Ms. Scott's automobile. The force of the collision dragged Ms. Scott's vehicle a distance of roughly forty feet. According to Ms. Scott's testimony, she immediately noticed swelling in both feet and bruising on her arms and chest. She was treated for her injuries at Beauregard Memorial Hospital soon after the accident. Emergency room physicians took X-rays, performed an examination of Ms. Scott's injuries, and prescribed pain medication. Ms. Scott was also instructed to wear a sling for her arm and shoulder.

Ms. Scott returned to Beauregard Memorial three days after the accident, complaining of headaches and pain in her back, neck, and shoulder. Hospital staff treated her and referred her to her family physician, Dr. Edwin R. Bonilla.

On October 11, 1999, Ms. Scott consulted Dr. Bonilla, presenting complaints of general soreness. Dr. Bonilla prescribed pain medication and an analgesic and suggested that Ms. Scott seek chiropractic therapy. The record indicates that in concurrence with occasional follow-up appointments with Dr. Bonilla, Ms. Scott visited her chiropractor, Dr. Darryl V. Bauer, of DeQuincy, Louisiana, fourteen times between October of 1999 and June of 2000, with the concentration of visits occurring in October and November. Dr. Bauer performed X-rays, which showed misaligned vertebrae, and he also administered myofascial massage in an attempt to alleviate some of the pressure on the nerve roots surrounding Ms. Scott's spinal cord. According to Ms. Scott's testimony, Dr. Bauer's treatments afforded only temporary relief from the pain she suffered as a result of her injuries.

On Dr. Bauer's advice, Ms. Scott sought the expertise of an orthopedist. She began seeing Dr. R. Dale Bernauer on November 15, 1999, and as of the time of trial in the matter in early December 2002, she remained under his care. Dr. Bernauer instructed Ms. Scott to wear a body glove and a TENS unit, which she still wore at the time of trial; however, she stated, these devices provided only temporary relief from pain. In efforts to determine the status of her injuries and to determine a proper course of therapy, Dr. Bernauer had Ms. Scott undergo five MRI's, an EMG, a CAT scan, and a myelogram. Ms. Scott testified at trial that the EMG was particularly onerous, and the myelogram and its effects required her to miss a week of work. Dr. Bernauer testified that surgery had been scheduled for the week after trial for

2

purposes of repairing Ms. Scott's left shoulder and that surgery would more likely than not be required to repair her lumbar herniation.

Prior to the accident, Ms. Scott held a teller position in a DeRidder bank. Her job required her to be on her feet for extended periods of time and to handle a significant volume of coins. Ms. Scott testified at trial that she continued to work at the bank for two years after the accident, but that, in November 2001, the pain required that she terminate her employment.

Ms. Scott and her husband, Earl Lee Scott, filed a petition in the instant matter on October 2, 2000. They named as defendants James Roberts, the driver of the other vehicle involved in the crash; the State of Louisiana through the Department of Transportation and Development; and Louisiana Farm Bureau Casualty Insurance Co. The petition alleged that the Scotts' damages were caused by the fault, negligence, and/or the strict liability of the defendants, claiming that the State was liable for the acts of Roberts, its employee, through principles of respondeat superior.

The Scotts' petition alleged injuries to Ms. Scott's neck, thoracic spine, lower spine, right elbow, leg, and cervicothoracic lumbar region, and sought both special and general damages associated with the alleged injuries. Mr. Scott sought damages for loss of consortium.

After the Scotts voluntarily dismissed Louisiana Farm Bureau from the case, they moved for summary judgment as to their claims against the State. Summary judgment was granted, and the State was determined to be liable as the sole cause of the plaintiffs' injuries. In December 2002, the matter went to trial by jury as to the amount of damages to be awarded.

3

After hearing testimony from Mr. and Ms. Scott, Dr. Bonilla, Dr. Bauer, and Dr. Bernauer, the jury returned a special verdict awarding the Scotts the following amounts:

General damages: $300,000
Special damages:
    Past Medical Expenses: $16,930.40
    Future Medical Expenses: $45,000
    Loss of Earnings to Date: $18,308
    Future loss of Earnings or Earning Capacity: $25,000

Additionally, the jury determined that the State was responsible for Mr. Scott's loss of consortium and awarded him compensation of $25,000.

The State appeals, asserting in its sole assignment of error that the general damages awarded are excessive.

## Discussion

The State claims that the jury erred in awarding $300,000 in general damages to Ms. Scott and seeks a reduction in the amount of general damages awarded. With respect to Ms. Scott's neck injuries, the State underscores the trial testimony of Ms. Scott's orthopedist that her injuries were not substantial enough to necessitate surgery. Additionally, the State requests that we compare prior general damages awards for plaintiffs with injuries to the L5-S1 region of the spinal cord. Finally, the State notes that Ms. Scott's physicians have not seen fit to assign her a disability; Ms. Scott was not taking prescription pain medication at the time of trial; and she terminated employment without her physicians' express orders to do so.

General damages are described in the Louisiana Supreme Court's opinion in *Duncan v. Kansas City Southern Railway Co.*, 00-0066, p. 13 (La. 10/30/00), 773 So.2d 670, 682, *cert. dismissed*, 532 U.S. 992. 121 S.Ct. 1651 (2001), as:

4

[T]hose which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." *Keeth v. Dept. of Pub. Safety & Transp.*, 618 So.2d 1154, 1160 (La.App. 2 Cir. 1993). Vast discretion is accorded the trier of fact in fixing general damage awards. La. Civ. Code art. 2324.1; *Hollenbeck v. Oceaneering Int., Inc.*, 96-0377 (La.App. 1 Cir. 11/8/96), p.13; 685 So.2d 163, 172.

In *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994), the supreme court enunciated its general disapproval of the practice of comparing the present award to past awards in efforts to determine whether the present award was the product of the factfinder's abuse of discretion. Instead, the supreme court stated:

> The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d 149 (1963); *Ballard v. National Indem. Co. of Omaha, Neb.*, 246 La. 963, 169 So.2d 64 (1964); *Lomenick v. Schoeffler*, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Industries, Inc.,* 341 So.2d 332 (La.1976); *Bitoun v. Landry*, 302 So.2d 278 (La.1974); *Spillers v. Montgomery Ward & Co.*, 294 So.2d 803 (La.1974).

*Youn*, 623 So.2d at 1260-61. The court then turned its attention to the standard of review to be implemented by appellate courts in determining whether an abuse of discretion has occurred:

> The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d 149 (1963) through *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976), and through *Reck* [*v. Stevens*, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should

5

> rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

*Id.* at 1261.

In determining whether an award of general damages constitutes an abuse of discretion, appellate courts must decide whether a rational trier of fact could have fixed the general damages award at that same level. *Youn, Id., citing Bartholomew v. CNG Producing Co.*, 832 F.2d 326 (5th Cir. 1987). In so doing, appellate courts are to examine the record in the light most favorable to the prevailing party at trial. *Id.*

When we examine the record in the light most favorable to Ms. Scott, we find the evidence therein supports the general damages award in controversy on appeal. The record reflects that before the accident at issue, Ms. Scott had slight problems with her *right* shoulder but no problems with her *left* shoulder, back, neck, legs, or feet. Ms. Scott testified at trial that as a result of the accident, and despite the pain medication she takes, she suffers painful neck spasms, her back hurts constantly, her leg occasionally bothers her, both shoulders hurt, and her feet swell. In fact, she noted, the pain is still so severe that it awakens her when she is asleep at night. She told the trial court of her initial pain immediately following the accident, and she described numerous, persistent attempts on her part to seek medical treatment for her injuries and pain. Ms. Scott explained that the efforts of her chiropractor and general practitioner had provided only temporary relief from her suffering. Upon commencing treatment with Dr. Bernauer, Ms. Scott was required to endure several uncomfortable, painful tests over a period of time; as previously mentioned, the myelogram forced her to miss one week of work. Ms. Scott explained at trial that she

6

had attempted to work as a bank teller in spite of her injuries, but the pain became too great, prompting her to resign her position. She further testified that she would like to reenter the work force, but the pain and her injuries simply will not allow it. Dr. Bernauer testified that he did not recommend that Ms. Scott return to work.

Mr. Scott described to the trial court the decline in Ms. Scott's ability to perform household work after the accident. He testified that he has had to take up the duty of housework due to his wife's condition. He noted that in the time before she quit her job as a teller, she would come home at night in tears due to pain. Mr. Scott mentioned that he and his wife are unable to travel in the manner to which they were accustomed and that Ms. Scott is no longer able to travel to California to visit her father or to Dallas to visit her mother.

Furthermore, the record indicates that Ms. Scott was scheduled to undergo an acromioplasty on her left shoulder the week after trial in this matter and that Dr. Bernauer believed that more likely than not, an intralumbar fusion was necessary. As far as Ms. Scott's neck is concerned, she testified that it still bothered her, but Dr. Bernauer said that surgery would not help correct the situation. The shoulder surgery was expected to require several weeks' recovery and physical therapy; the back surgery would require recovery time of one full year. Thereafter, according to Dr. Bernauer's testimony, Ms. Scott will not be able to return to her former employment as a teller due to limitations on bending, lifting, and standing for long periods of time.

Moreover, the verdict indicates that the jury found Ms. Scott's testimony credible, as they awarded her damages for past and future lost wages and future medical expenses. (The parties had previously stipulated the amount of past medical

expenses.) These determinations are now final in that the State has not questioned them on appeal.

It is the well-settled jurisprudence of this state that in making an award of general damages, the trier of fact "must consider the severity and duration of the injured party's pain and suffering." *LeBlanc v. Stevenson*, 00-0157, p. 6 (La. 10/17/00), 770 So.2d 766, 772. It is apparent that in its consideration of the general damages award, the jury noted Ms. Scott's testimony as to her pain, injuries, and impending surgeries and her testimony that she has suffered considerable pain as a result of her injuries over the past three years since the accident. The evidence supports this conclusion and indicates that the award for general damages was not an abuse of the jury's discretion. It is therefore not necessary for us to consider prior awards for similarly situated plaintiffs as the State urges us to do. This assignment of error is without merit.

## DECREE

For the foregoing reasons, the award of general damages is affirmed. All costs of this proceeding are assigned to the defendant, the Department of Transportation and Development, in the amount of $7,752.92.

**AFFIRMED.**