# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1137

**ALEXANDER MARSHALL**

**VERSUS**

**NATHAN BOYDSTON, ET AL.**

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 07-C-5677-D
HONORABLE DONALD WAYNE HEBERT, DISTRICT JUDGE

**********

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and Elizabeth A. Pickett, Judges.

**AMENDED AND, AS AMENDED, AFFIRMED.**

**Charles M. Jarrell**
**Guglielmo, Lopez, Tuttle, Hunter & Jarrell**
**P. O. Drawer 1329**
**Opelousas, LA 70571-1329**
**Telephone: (337) 948-8201**
**COUNSEL FOR:**
    **Defendants/Appellees - Nathan Boydston and CIT National Insurance Company**

**Joslyn Renee Alex**
**P. O. Box 126**
**Breaux Bridge, LA 70517**
**Telephone: (337) 332-1180**
**COUNSEL FOR:**
    **Plaintiff/Appellant - Alexander Marshall**

**THIBODEAUX, Chief Judge.**

Plaintiff, Alexander Marshall, asserts that the trial court erred in this vehicle accident case by allowing the defendant's expert to testify on issues outside his area of expertise, in finding that Mr. Marshall sustained only soft tissue injuries and awarding damages accordingly, in failing to award all medical expenses, and in failing to award damages for Mr. Marshall's lost wages. For the following reasons, we affirm the trial court's judgment, except the award of medical expenses. Because we find that the trial court abused its discretion by denying expenses Mr. Marshall incurred for proper diagnostic procedures, we amend in part this trial court's judgment and increase the award by $4,690.00 for a total of $17,648.67.

I.

## ISSUES

We shall consider whether, in this motor vehicle accident case where the defendant stipulated his liability, the trial court erred by:

(1)   allowing a medical doctor specializing in forensic pathology to testify as an expert in this case involving neurology;

(2)   finding that the plaintiff sustained only soft tissue injuries and awarding damages accordingly;

(3)   failing to award lost wages where the plaintiff did not specifically plead this claim in his petition but asked for any damages that can be proven at trial; and,

(4)   failing to reimburse the plaintiff's magnetic resonance imaging (MRI) costs where a neurologist, to whom the plaintiff's primary treating physician referred the plaintiff, consulted these MRIs in diagnosing the plaintiff.

II.

## FACTS

On January 10, 2007, Mr. Marshall was involved in a motor vehicle accident with Mr. Nathan Boydston. Mr. Boydston stipulated his liability, and the trial court held a trial on the issues of causation and damages. Dr. Emile Laga, a forensic pathologist, testified as an expert witness for the defense. Mr. Marshall objected to Dr. Laga's testimony because Dr. Laga was not an expert neurologist and would, therefore, testify outside of his area of expertise regarding Mr. Marshall's injuries.

After Dr. Laga's lengthy testimony regarding his education and experience, the trial court qualified Dr. Laga as an expert in forensic pathology, surgical pathology, autopsy pathology, clinical lab work, toxicology, and general medicine. The trial court then allowed Dr. Laga to testify.

Mr. Marshall introduced a deposition of Dr. John Sabow, a neurologist from South Dakota. Mr. Marshall also introduced his medical records that contained information regarding his accident injuries, their treatment, as well as his general state of health.

After a review of the evidence in the case, the trial court concluded that it was undisputed that Mr. Marshall suffered from Type II diabetes which was progressive and virtually uncontrolled. The trial court noted Dr. Laga's testimony that this type of diabetes could affect heart, vision, kidneys, arteries, and retina functions. Based on a toxicology report, the trial court observed that Mr. Marshall's kidneys were also in a bad condition. Relying on Dr. Laga's testimony, the trial court stated that Mr. Marshall's medical records indicated that, consistent with his diabetes, he had neuropathy and small blood vessel disease in his legs and brain. Mr. Marshall

also suffered from anemia, gastrointestinal tract problems, and hypertension. The trial court also mentioned medications Mr. Marshall was taking for his various medical conditions. Again, the trial court relied on Dr. Laga's testimony that these medications produce adverse side effects, including drowsiness and dizziness.

After a lengthy examination of Dr. Sabow's testimony, the trial court discounted it because: (1) Dr. Sabow never examined Mr. Marshall; (2) Mr. Marshall's medical records did not correlate with Dr. Sabow's findings and diagnoses; and, (3) the trial court concluded that Dr. Sabow relied on supposition, assumption, and inaccurate review of incomplete medical records.

The trial court found that, as a result of the accident, Mr. Marshall sustained soft tissue injuries that manifested themselves in headaches, shoulder pain, and low back and thigh pain. The trial court relied on Mr. Marshall's medical records and testimony of Dr. Bryan Lebean who treated and reduced Mr. Marshall's suffering from the soft tissue injuries. The trial court also held that because of Mr. Marshall's age and his state of health, he was not able to recover quickly and completely after the accident. The trial court, thus, awarded Mr. Marshall $24,500.00 in general damages and $12,958.67 in medical expenses.

Mr. Marshall claims that the trial court improperly allowed Dr. Laga, who was not a neurologist, to testify in the case involving neurology. Mr. Marshall also claims that the trial court abused its discretion by awarding only $24,500.00 in general damages. Mr. Marshall argues that his injuries included not only soft tissue injuries, but a closed head injury, a subdural hematoma, and spine injuries for which the trial court did not compensate him. Mr. Marshall supports his claim for a subdural hematoma with his medical records that indicate its complete resolution two weeks after the accident. To establish causation of his spinal cord injuries, Mr.

3

Marshall relies on a letter, dated June 26, 2009, from a neurologist, Dr. Wael Karim, to his primary treating physician, Dr. Calvin White. Dr. White referred Mr. Marshall to Dr. Karim for a consultation. In this letter, Dr. Karim acknowledged that Mr. Marshall was involved in a vehicle accident in 2007. Dr. Karim diagnosed Mr. Marshall with disc herniation and spinal disease. Mr. Marshall neither took Dr. Karim's deposition, nor tendered him as an expert witness at trial.

Mr. Marshall also argues that because his petition asked for any damages that could be proven at trial, the trial court erred by not awarding Mr. Marshall his lost wages. Finally, Mr. Marshall claims that the trial court did not award damages for all medical expenses related to the accident. In particular, Mr. Marshall asserts that the $12,958.67 award did not include the bills for MRIs Mr. Marshall underwent in 2007 and in 2009 upon which Dr. Karim relied in making his diagnoses.

III.

**STANDARD OF REVIEW**

"[A] court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.'" *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). Thus, "where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id.* (citing *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978); *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973)).

"[T]he trial court has wide discretion in determining whether to allow a witness to testify as an expert, and its judgment will not be disturbed on appeal unless it is clearly erroneous." *Deer Field Hunting Club, Inc. v. Swayze Plantation, L.L.C.*,

4

08-313, pp. 7-8 (La.App. 3 Cir. 12/10/08), 998 So.2d 1235, 1240, *writ denied*, 09-479 (La. 5/15/09), 8 So.3d 582 (citing *Abshire v. Wilkenson*, 01-75 (La.App. 3 Cir. 5/30/01), 787 So.2d 1158).

"The discretion afforded the trier of fact to assess special damages is narrower or more limited than the discretion to assess general damages." *Koehn v. Rhodes*, 38,941, p. 8 (La.App. 2 Cir. 9/24/04), 882 So.2d 757, 763 (citing *Neloms v. Empire Fire & Marine Ins. Co.*, 37,786 (La.App. 2 Cir. 10/16/03), 859 So.2d 225; *Moody v. Blanchard Place Apartments*, 34,587 (La.App. 2 Cir. 6/20/01), 793 So.2d 281, *writ denied*, 01-2582 (La. 12/14/01), 804 So.2d 647; *Eddy v. Litton*, 586 So.2d 670 (La.App. 2 Cir. 1991), *writ denied,* 590 So.2d 1203 (La.1992)). Special damages include medical expenses. *Id.*

## IV.

## LAW AND DISCUSSION

### The Expert Testimony

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." La.Code Evid. art. 702. "Generally, the fact that a medical doctor is not a specialist in a particular field applies only to the effect or the weight to be given such testimony, not to its admissibility." *Matter of Aaron*, 417 So.2d 105 (La.App. 3 Cir. 1982) (citing *McCastle v. Woods*, 180 So.2d 421 (La.App. 1 Cir. 1965); *Frye v. Joe Gold Pipe & Supply Co.*, 50 So.2d 38 (La.App. 2 Cir. 1951)).

Here, the trial court, after a very lengthy examination of Dr. Laga's education and experience, concluded that Dr. Laga was an expert pathologist,

toxicologist, and medical doctor. As Mr. Marshall correctly pointed out, Dr. Laga was not a neurologist. Yet, while we caution a trial court's reliance on an expert testimony when that expert testifies outside of her or his area of expertise, we do not find that the trial court abused its wide discretion here by allowing Dr. Laga to testify.

Given Dr. Laga's board certifications in medicine, surgical and forensic pathology, in clinical chemistry and toxicology, and his extensive experience and education, the trial court did not err when it qualified him as an expert pathologist, toxicologist, and medical doctor. The record reveals that the trial court relied on Dr. Laga's testimony regarding the side effects of Mr. Marshall's medicines, his diabetes and its effect on Mr. Marshall's health, and Mr. Marshall's general state of health as documented in his medical records.

Dr. Laga also testified about neurological tests performed on Mr. Marshall at the LSU Medical Center shortly after the accident and that the records showed no neurological impairment in Mr. Marshall's extremities. Dr. Laga further testified that the medical records indicated a presence of questionable subdural hematoma but that a Computed Tomography (CT) scan performed two weeks after the accident was normal. Dr. Laga opined that if Mr. Marshall had a hematoma after the accident, it had resolved itself two weeks later. Dr. Laga did not personally review any MRIs or CT scans, and his opinions were based solely on the reports of others.

Clearly, some of Dr. Laga's testimony was within his area of expertise. On the other hand, testimony involving issues of neurology was outside of Dr. Laga's expertise. The trial court gave consideration to Dr. Laga's testimony regarding Mr. Marshall's diabetes, side effects of his medications, and Mr. Marshall's general health. It does not appear that the trial court gave weight to Dr. Laga's neurological

conclusions and, instead, based its findings on Mr. Marshall's medical records described by Dr. Laga. Therefore, while trial courts should be cautious when they allow an expert to testify outside her or his area of expertise, the trial court did not abuse its very wide discretion here by allowing Dr. Laga to testify.

**General Damages**

"[A] lump sum judgment is presumed to award all items of damages claimed." *Bryan v. City of New Orleans*, 98-1263, p. 2 (La. 1/20/99), 737 So.2d 696, 697 (citing *Reichert v. Bertucci*, 96-1213 (La.App. 4 Cir. 12/4/96), 684 So.2d 1041, *writ denied*, 97-23 (La. 2/7/97), 688 So.2d 511; *Boutte v. Nissan Motor Corp.*, 94-1470 (La.App. 3 Cir. 9/13/95), 663 So.2d 154). When it comes to general damages, "[t]he appellant's burden of proving the fact finder clearly abused its great discretion is more difficult than usual because the intention to award a specific amount for any particular item is not readily ascertainable." *Id*. at 698. The trial court abuses its discretion when an appellate court, reviewing the record in the light most favorable to the prevailing party, determines that a rational trier of fact could not have fixed the general damages award at the same level. *Scott v. Roberts*, 03-435 (La.App. 3 Cir. 10/1/03), 856 So.2d 1258, *writ denied*, 03-3028 (La. 1/30/04), 865 So.2d 80 (citing *Youn v. Mar. Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994)). Finally, "[i]n assessing damages in a personal injury case, a court must consider the severity and duration of the injured party's pain and suffering." *LeBlanc v. Stevenson*, 00-157, p. 6 (La. 10/17/00), 770 So.2d 766, 772 (citing *Duckett v. K-Mart Corp.*, 92-385 (La.App. 5 Cir. 2/15/95), 650 So.2d 414).

Here, Mr. Marshall claimed that the trial court abused its discretion by awarding him only $24,500.00 in general damages. Specifically, Mr. Marshall

maintained that the award inadequately compensated Mr. Marshall for the subdural hematoma, spinal injuries, loss of enjoyment of life, and pain and suffering that Mr. Marshall sustained as a result of the accident.

The medical records indicate presence of a subdural hematoma immediately after the accident. Yet, this hematoma was of a very short duration as a brain scan two weeks after the accident revealed its complete resolution.

Furthermore, we find that the trial court did not err by failing to find that Mr. Marshall sustained any spinal injuries as a result of the accident. The trial court did not manifestly err by discounting the testimony of Dr. Sabow, Mr. Marshall's expert neurologist. Dr. Sabow based his conclusions on an incomplete medical record that was missing pertinent details regarding Mr. Marshall's diabetic neuropathies. Moreover, the trial court observed that in finding Mr. Marshall sustained a spinal cord injury, Dr. Sabow relied on the information allegedly in Dr. Lebean's records that those records did not contain.

Mr. Marshall also relied on Dr. Karim's letter. Dr. Karim was a neurologist who examined Mr. Marshall in 2009 and reviewed his medical records and MRIs. Dr. Karim stated in his June 2009 letter to Mr. Marshall's treating physician that Mr. Marshall suffered from disc herniation and cervical spinal disease that might require surgical intervention. The letter did not state that these conditions were the result of the accident that occurred in 2007. We, therefore, do not find that the trial court abused its discretion by determining that Mr. Marshall failed to establish that he suffered an injury to his spine as a result of the accident.

Mr. Marshall clearly suffered from headaches, back pain, and other various pains and conditions. He underwent several months of therapy with Dr. Lebean whose medical records indicated that while the pain and headaches did not

go away completely, the therapy was effective at reducing the pain. Mr. Marshall suffered from various conditions related to his uncontrolled diabetes, hypertension, anemia, and side effects of his medicines that, as the trial court found, could be responsible for Mr. Marshall's dizziness and headaches. Finally, the trial court also observed that neurological tests, performed shortly after the accident, revealed no deficiencies or impairments.

Based on these considerations, we do not find that the trial court abused its discretion by awarding $24,500.00 for the injuries that required no surgical intervention or involved significant neurological injuries.

**Lost Wages**

"When items of special damage are claimed, they shall be specifically alleged." La.Code Civ.P. art. 861. "'Special damages' are those that can be fixed to a pecuniary certitude." *Stevens v. Winn-Dixie of La.*, 95-435, p. 9 (La.App. 1 Cir. 11/9/95), 664 So.2d 1207, 1213 (citing *Hernandez v. Cont'l Cas. Ins. Co.,* 615 So.2d 484, (La.App. 4 Cir.), *writ denied*, 620 So.2d 850 (La.1993)). Lost wages is an item of special damage that must be specifically pled.

Here, Mr. Marshall's petition did not specifically allege a loss of wages. A petitioner's request for any damages that can be proven at trial does not satisfy the specificity requirement of La.Code Civ.P. art. 861. Therefore, the trial court committed no error by not considering Mr. Marshall's claim for lost wages.

**Medical Expenses**

One may recover medical expenses one incurs as a result of an injury due to the fault of another. *Williams v. Enriquez*, 41,200 (La.App. 2 Cir. 6/28/06), 935 So.2d 269. When a victim of a motor vehicle accident alleges that the victim incurred

9

a medical expense and supports that allegation with a bill, "unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of that item in the judgment." *Gradnigo v. La. Farm Bureau Cas. Ins. Co.*, 08-1198, p. 15 (La.App. 3 Cir. 3/4/09), 6 So.3d 367, 377 (quoting *Esté v. State Farm Ins. Cos.*, 96-99, p. 10 (La.App. 3 Cir. 7/10/96), 676 So.2d 850, 857). Moreover, "[a] tortfeasor is required to pay for the cost of overtreatment or unnecessary medical treatment unless the overtreatment was incurred by the victim in bad faith." *Beasley v. Yokem Toyota*, 33,805, p. 12 (La.App. 2 Cir. 8/23/00), 767 So.2d 149, 158 (citing *White v. Wal-Mart Stores, Inc.*, 32,621 (La.App. 2 Cir. 3/3/00), 753 So.2d 995, *writ denied,* 00-1222 (La. 6/23/00), 765 So.2d 1041). Failure to award full amount of medical expenses proved by the victim of an accident is an error. *Id.* (citing *Sumrall v. Sumrall*, 612 So.2d 1010 (La.App. 2 Cir. 1993)).

Here, Mr. Marshall claimed that the trial court did not award damages for all medical expenses related to the accident. In particular, Mr. Marshall alleged that the $12,958.67 award did not include the bill for $1,300.00 for an MRI Mr. Marshall underwent on June 29, 2007, and the bill for $3,390.00[1] for MRIs Mr. Marshall underwent on June 24, 2009. Dr. Troy LeBlanc, a chiropractor, ordered the 2007 MRI. Dr. White, Mr. Marshall's primary treating physician, ordered the 2009 MRIs. Dr. White then referred Mr. Marshall to Dr. Karim, a neurologist.

Dr. Karim, in his letter to Dr. White that documented his evaluations, acknowledged that Mr. Marshall was referred to him as a result of the January 2007 motor vehicle accident. The letter indicated that Mr. Marshall complained of

---

[1]Mr. Marshall's brief stated that the bill for the June 24, 2009 MRI was for $3,300.00. Yet, the record indicates that the bill was for $3,390.00. Mr. Boydston's brief referred to June 24, 2007 MRIs requested by Dr. White. The record contains only June 24, 2009 MRIs requested by Dr. White. We, therefore, presume that both parties made clerical errors in their briefs.

10

headaches and back and leg pains. Dr. Karim relied on both the 2007 and the 2009 MRIs to make his diagnoses of a herniated disc and spinal disease. While Dr. Karim's letter did not unequivocally establish that Mr. Marshall's conditions resulted from the accident, Mr. Marshall consulted Dr. Karim because he considered his headaches and pains to be the result of the accident.

MRIs are appropriate diagnostic tools. The trial court did not give any reasons for its award of medical expenses or why it disregarded certain bills. Mr. Marshall underwent the 2007 MRI relatively shortly after the accident. Mr. Marshall's primary treating physician ordered the 2009 MRIs and Dr. Karim's consultations because of Mr. Marshall's ongoing conditions that began after the accident. Dr. Karim relied on these MRIs in his diagnoses. Because there was no sufficient contradictory evidence or reasonable suspicion that these bills were not related to the accident and because the defendant is responsible even for unnecessary medical treatment as long as it was incurred in good faith, we find that the trial court abused its discretion by denying these valid diagnostic expenses.

V.

## CONCLUSION

The judgment in favor of Alexander Marshall is amended in part and rendered. We increase the award of medical expenses by $4,690.00 and order Nathan Boydston to pay to Alexander Marshall this sum in addition to $12,958.67 the trial court awarded, for the total of $17,648.67 in medical expenses. We affirm the trial court's judgment in all other respects. Costs of this appeal are assessed equally to both parties.

**AMENDED AND, AS AMENDED, AFFIRMED.**

11